United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLY GEM INDUSTRIES INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>JAMES RIVER INSURANCE COMPANY,<br><br>　　　　　Defendant. | Case No. 20-cv-02475-DMR<br><br>**ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 31 |

　　　　Plaintiffs Ply Gem Industries Inc. ("Ply Gem") and Ply Gem Pacific Windows Corporation filed this action on April 13, 2020, and an amended complaint on July 21, 2020. [Docket Nos. 1, 25 ("FAC").] The FAC alleges state law claims arising from an insurance policy that Plaintiffs purchased from Defendant James River Insurance Company ("James River"). Ply Gem now moves for partial summary judgment on the first claim for relief.[1] [Docket Nos. 31 ("Mot."), 37 ("Reply").] James River opposes. [Docket No. 33.] The court held a hearing on September 24, 2020. Having considered the parties' submissions and oral argument, and for the reasons stated below, the motion is granted.

## I.　BACKGROUND

　　　　The following facts are undisputed. Ply Gem is a manufacturer of home building products and specializes in manufacturing and supplying windows for residential and commercial projects. [Docket No. 31-4, Declaration of Chad Wieberg ("Wieberg Decl.") ¶¶ 2-3.] Ply Gem purchased a general liability insurance policy from James River, with a policy period effective October 31, 2017 through October 31, 2018. *Id.* ¶ 5, Ex. A ("Policy"). The policy requires James River to "defend the insured against any 'suit' seeking" damages due to "bodily injury" or "property damage."

---

[1] The first claim is brought only on behalf of Ply Gem. Accordingly, Ply Gem Pacific Windows Corporation is not a party to this motion.

Policy, section I(1)(a). The Policy defines "property damage" as (1) "[p]hysical injury to tangible property, including all resulting loss of use of that property" or (2) "[l]oss of use of tangible property that is not physically injured." Policy, section IV(17)(a)-(b).

On June 8, 2018, CP V JLS, LLC ("CPV") filed a state law action against Ply Gem and other defendants, alleging that Ply Gem supplied defective windows for a construction project.[2] Wieberg Decl., Ex. B ("State Complaint"). The State Complaint alleged that CPV entered into a construction management agreement with CP Construction West, Inc. ("CP West"), another defendant in the State Action. *Id.* ¶ 7. CP West was to supply services, labor, materials, equipment, and supervision for improvements to a mixed-use residential community in Oakland. *Id.* CP West then contracted with Ply Gem, which agreed to supply windows for the project. *Id.* ¶ 8. Ply Gem began delivering windows in December 2017. *Id.* ¶ 9. A subcontractor for CP West installed the windows in one of the community's buildings and began water testing the windows in February 2018. *Id.* CPV alleged that many of the windows leaked during the testing and that the windows had to be replaced. *Id.* CPV brought claims for breach of contract and breach of warranty against Ply Gem, claiming consequential damages for "delays arising out of Ply Gem's failure to comply with the terms of the Purchase Order [between CP West and Ply Gem], including, without limitation, providing defect free windows to the Project." *Id.* ¶ 18. CPV also alleged a negligence claim against Ply Gem and asserted that because of Ply Gem's negligence, CPV "suffered damage, including, without limitation, consequential damages and property damage to the materials encasing Ply Gem's product." *Id.* ¶ 21.

Shortly after being served with the State Complaint, Ply Gem sent it to James River with a demand that James River defend Ply Gem in the State Action pursuant to the terms of the Policy. Wieberg Decl. ¶ 7. On November 12, 2018, Ply Gem's then-counsel in the State Action, Elaine Fresch, sent an Initial Case Evaluation Report to James River. Wieberg Decl., Ex. D ("Fresch Report"). Fresch explained that the expected damages "will be the difference between the contract price for the Ply Gem windows and what was paid . . . for the replacement windows, plus any

---

[2] "State Action" refers to *CP V JLS, LLC v. CP Construction West, Inc. et al.*, Case No. RG18908145 in Alameda County Superior Court.

incidental and consequential damages associated with the breach, including storage, testing, inspections, and delay . . . ." *Id.* at p. 7. On December 17, 2018, James River denied coverage for the Action. Wieberg Decl., Ex. C. The coverage denial letter explained, among other things, that CPV did not allege any damages for "property damage" as defined in the Policy. *Id.* at p. 3. Amanda Snead, an excess casualty underwriter for James River issued the denial of coverage based on Fresch's representations about the claimed damages. *See* Docket No. 35, Declaration of Amanda Snead ("Snead Decl.") ¶¶ 1, 5-6.

On April 13, 2020, Plaintiffs filed this suit challenging James River's denial of coverage. The operative complaint alleges claims for (1) Breach of Contract Duty to Defend—Underlying Action; (2) Breach of Contract Duty to Defend—Underlying Cross Action; (3) Breach of Contract; (4) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (5) Declaratory Judgment. Ply Gem moves for partial summary judgment on the first claim.

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id*. at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id*. at 249.

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice.

3

*See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Ply Gem argues that summary judgment is warranted because the terms of the Policy require James River to defend it in suits seeking recovery for property damage, and the State Action is potentially such an action. James River responds that it has no duty to defend because the incident underlying the State Action did not involve any covered damage.

Under California law, an insurer must defend any suit "which *potentially* seeks damages within the coverage of the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (internal quotation marks and citation omitted) (emphasis in original). The duty to defend "may exist even where coverage is in doubt and ultimately does not develop." *Id.* (citation omitted). Determination of whether the duty exists "depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy." *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 654 (2005). However, "[f]acts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Montrose Chem. Corp.*, 6 Cal. 4th at 295. "[T]he test for an insured to prove that it was owed a duty to defend is extremely lenient." *Parklyn Bay Co., LLC v. Liberty Ins. Corp.*, 119 F. Supp. 3d 1143, 1147 (N.D. Cal. 2015). While an insured "need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Montrose Chem. Corp.*, 6 Cal. 4th at 300 (emphasis in original). Doubts about whether the facts give rise to the duty to defend "must be resolved in the insured's favor." *Id.*

Here, the parties agree that the Policy provides coverage for damages arising out of "property damage" but dispute whether the State Action seeks recovery for such damages. Ply Gem argues that the allegations in the State Complaint as well as the evidence uncovered through discovery in the State Action show that the suit is potentially covered under the Policy. Specifically, the State Complaint alleges that Ply Gem's windows "leaked" and that CPV suffered "consequential damages

4

and property damage to the materials encasing Ply Gem's product" as a result. State Complaint ¶¶ 9, 21. Ply Gem argues that "property damage to the materials encasing Ply Gem's product" clearly invokes coverage for "property damage" as defined in the policy. Moreover, Ply Gem propounded Form Interrogatories that asked CPV to "describe the nature and location of the loss or damage to the **subject property**." [Docket No. 31-2, Declaration of Martin Bern ("Bern Decl."), Ex. A, Ply Gem's Form Interrogatories at p. 11 (emphasis in original).] CPV responded that "[l]oss or damage to the Project includes defective, leaking windows that had to be removed, which caused damage to other components, and then replaced with functioning windows . . . ." *Id.* Ply Gem asserts that the language "other components" indicates that something other than the windows themselves suffered damage. *See* Mot. at 11. Finally, Ply Gem obtained the reports from the 2018 water testing, which include images of water leaking onto surfaces near the windows. *See* Bern Decl., Ex. B. Ply Gem argues that the allegations and evidence show at minimum that there is a potential that the State Action is covered because of alleged property damage.

James River disputes Ply Gem's description of the allegations and evidence in the State Action and argues that any property damage was caused by removal and replacement of the faulty windows, which is not covered as a matter of law. Thus, James River points out that the State Complaint only alleges "property damage to the materials encasing Ply Gem's product." *See* State Complaint ¶ 21. According to James River, CPV's interrogatory responses clarify that the claimed "property damage" was caused by the removal of the windows rather than by water leaking through the windows. It asserts, and Ply Gem does not dispute, that "rip and tear" damages relating to the replacement of the windows do not qualify as "property damage" under general liability policies. *See* Opp. at 18 (citing *Regional Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal. App. 4th 1377 (2014)). James River further claims that the test results "show water leaks only and make no findings or notations about property damage resulting therefrom." Opp. at 8. It argues that these extrinsic facts establish that it has no duty to defend Ply Gem in the State Action. Finally, James River argues that Fresch, Ply Gem's own counsel, represented that CPV was not seeking recovery for property damage and that James River denied coverage based on that representation. Opp. at 7.

James River's arguments are not convincing. As an initial matter, James River claims that

"there is a complete absence of any allegation of resultant property damage in the Underlying Action," but in the very next sentence it acknowledges the allegation in the State Complaint that there was "property damage to the materials encasing Ply Gem's product." *See* Opp. at 16. It is disingenuous to claim that the complaint cannot be construed to allege "property damage" when that exact language appears on the face of the document.

In addition, James River's opposition brief relies upon unsupported factual assertions. For example, James River asserts that Ply Gem's "windows were replaced immediately upon failing their water testing in February 2018." Opp. at 6; *see also* Opp. at 8 (discussing the windows' "immediate replacement"); 16 ("CP LL's quick replacement of the windows almost immediately after installation . . . ."); 17 ("The Ply Gem windows were . . . quickly replaced to prevent property damage."); 21 ("The Ply Gem windows were replaced immediately after install . . . ."). Although James River is not explicit on this point, it appears to argue that the windows were replaced so quickly that water damage due to leaking did not have time to occur. To begin with, whether or not water damage actually occurred is irrelevant, for the key to the duty to defend is the possibility of coverage, "even if coverage is in doubt and ultimately does not develop." *Montrose Chem. Corp.*, 6 Cal. 4th at 295. Moreover, the court cannot consider James River's assertion that the windows were replaced "quickly" because it is not supported by the record. The State Complaint alleges only that water testing commenced on February 12, 2018, that testing "continued periodically thereafter," and that the windows were "eventually replace[d]." State Complaint ¶ 9. These allegations do not give any indication of when the windows were replaced, and the word "eventually" does not equate to or even suggest "quickly."[3] In fact, the testing reports span a period of almost three months, undermining James River's description of the timeline. *See* Bern Decl, Ex. B, at Bates Nos. ATI 000084 (testing report dated February 12, 2018), ATI 000392 (testing report dated May 7, 2018).

James River's reliance on CPV's interrogatory responses is also problematic because they are more ambiguous than James River posits. CPV explained that "[l]oss or damage to the Project

---

[3] James River's Request for Judicial Notice ("RJN") attaches a document purporting to show that construction on the subject property was completed in July 2019. *See* Docket No. 36. James River does not explain how the completion date of the project has any relevance to whether or when Ply Gem's windows caused property damage. The RJN is therefore denied as moot.

includes defective leaking windows that had to be removed, which caused damage to other components . . . ." CPV's response could be read to assert that damage "to other components" was caused by the leaking windows, by removal of the windows, or by both. It is therefore far from clear that CPV only alleges property damage in the form of uncovered "rip and tear" work resulting from the window removal and "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose Chem. Corp.*, 6 Cal. 4th 299–300.[4]

With respect to the Fresch Report, James River did not cite any authority for its position that Ply Gem's counsel's statements in an "Initial Case Evaluation Report" constitute an "extrinsic fact" upon which it may properly base a denial of coverage.[5] James River's position makes little sense here, given the explicitly incomplete contents of the Fresch Report. In her position as counsel for Ply Gem, Fresch analyzed CPV's complaint and told James River that Ply Gem "expect[s]" the claimed damages to be contractual in nature. *See* Fresch Report at 7. She communicated that her letter included a unilateral version of the facts "based on what has been provided by Ply Gem," because she was still waiting to receive documents from the plaintiff in the State Action. *Id.* She also noted that "[w]e currently do not know the extent of the Plaintiff's damages." *Id.* at 8. Fresch's predictions about the likely course of the lawsuit, presented on limited knowledge that had only been provided by Ply Gem and did not include the aggrieved plaintiff's version, are at most a preliminary assessment. Her preliminary assessment is not a "fact" upon which James River properly may base a decision to deny coverage.

---

[4] The majority of James River's briefing focuses on the lack of coverage for "rip and tear" damages and damages caused by repairs. There is no dispute that such damages are not covered, and accordingly, James River's arguments on those points are moot. The issue is instead whether any allegations or evidence fairly suggest that other property damage occurred. *See Scottsdale Ins. Co.*, 36 Cal. 4th at 655.

[5] At the hearing, James River identified *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1 (1995) as its best authority on this point. *Waller* held that "where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability." 11 Cal. 4th at 19. *Waller* did not address the issue for which James River cites it, namely whether representations by counsel are extrinsic facts. Moreover, *Waller* emphasized that extrinsic facts must "*eliminate* the potential for coverage." *Id.* (emphasis added). Preliminary representations by Ply Gem's counsel about anticipated damage claims do not eliminate the possibility that the plaintiff in the underlying suit will attempt to recover other damages.

Finally, James River argued at the hearing that its duty to defend did not arise until Ply Gem had exhausted its $500,000 self-insured retention.[6] *See Evanston Ins. Co. v. Am. Safety Indem. Co.*, 768 F. Supp. 2d 1004, 1013 (N.D. Cal. 2011) (holding that a valid self-insured retention "expressly precludes any duty to defend *until* the insured has actually paid the specified amount" (emphasis in original) (citation omitted)).  This fact is immaterial since the court has considered all extrinsic facts available to James River, not just those that existed at the time the State Complaint was tendered.  For the reasons stated above, these facts are not sufficient to eliminate a potential for liability.

In sum, James River has not identified any extrinsic facts that "conclusively eliminate a potential for liability" resulting from property damage.[7] *See Montrose Chem. Corp*, 6 Cal. 4th at 299.  Further, James River has not shown with conclusive evidence that its duty to defend was ever extinguished.  Accordingly, Ply Gem is entitled to partial summary judgment on its claim that James River breached its contractual duty to defend Ply Gem in the State Action.

## IV.  CONCLUSION

For the reasons stated above, Ply Gem's motion for partial summary judgment is granted.

**IT IS SO ORDERED.**

Dated: October 29, 2020



Donna M. Ryu
United States Magistrate Judge

---

[6] The parties agree that Ply Gem has now exhausted the self-insured retention.  *See* Opp. at 18-19; Reply at 6 n. 3.

[7] James River argues that Ply Gem "is still coming up empty on any claim of resultant damage" and that it does not have a duty to defend absent such evidence.  *See* Opp. at 18.  This argument turns the duty to defend standard on its head.  An insured "need only show that the underlying claim *may* fall within policy coverage," which Ply Gem did by tendering a complaint that alleged property damage.  *See Montrose Chem. Corp.*, 6 Cal. 4th at 300 (emphasis in original).  It is now James River's burden to prove that the claim cannot be covered.  *Id.* at 290 ("Facts that merely tend to show the claim is not covered, or may not be covered, but that are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales.").